[No. S001352. Oct. 16, 1989.]

PAULA E. PHILLIPS et al., Plaintiffs and Appellants, v.
DESERT HOSPITAL DISTRICT, Defendant and Respondent.

**COUNSEL**

Tanzer, Rosato & Samuels, Rosato & Samuels, Ellen Kamon, Cary S. Samuels, Ralph L. Rosato, Haines, Russ, McMurry & de Recat and Craig J. de Recat for Plaintiffs and Appellants.

Horvitz & Levy, Horvitz, Levy & Amerian, Merrill & Neiswender, Thompson & Colegate, David S. Ettinger, Thomas M. Brown, David M. Axelrad, Grant Marylander and Michelle L. Stern for Defendant and Respondent.

**OPINION**

**KAUFMAN, J.**—We granted review in this case to determine whether a notice of intention to commence an action based upon a health care provider's alleged professional negligence (Code Civ. Proc., § 364, subd. (a)) may activate the notice and defense-waiver provisions (Gov. Code, §§ 910.8, 911, 911.3) of the Tort Claims Act (Gov. Code, § 900 et seq.) (act).[1] As explained below, we conclude that a public entity must treat a notice, such as the notice at issue here, that alerts it to the existence of a

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

claim for monetary damages and an impending lawsuit but fails to comply substantially with the claim presentation requirements of the act, as a defective "claim" that triggers the operation of sections 910.8, 911 and 911.3. These sections (1) require a public entity to notify a claimant of any insufficiencies of content or timeliness that prevent a claim as presented from satisfying the requirements of the act and (2) provide that failure to give such notice waives any defenses based on those insufficiencies.[2]

## I.

This appeal is from a judgment of dismissal entered after the trial court sustained defendant's demurrer. Therefore, under settled law, we assume the truth of all properly pleaded material allegations of the complaint (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]; *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]) and give it a reasonable interpretation by reading it as a whole and its parts in their context (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]).

On September 11, 1983, plaintiff Paula E. Phillips was admitted to Desert Hospital (hospital), a public hospital district, the defendant herein. On the

---

[2] Section 910.8 provides in relevant part: "If in the opinion of the board or the person designated by it a claim as presented fails to comply substantially with the requirements of Sections 910 and 910.2, . . . the board or such person may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein. . . . The board may not take action on the claim for a period of 15 days after such notice is given."

Section 911 provides: "Any defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to such defect or omission as provided in Section 910.8, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant."

At the time this dispute arose, section 911.3 provided in relevant part: "(a) When a claim that is required by Section 911.2 to be presented not later than *the 100th day* after accrual of the cause of action is presented after such time without the application provided in Section 911.4, the board or other person designated by it may, at any time within 45 days after the claim is presented, give written notice to the person presenting the claim that the claim was not filed timely and that it is being returned without further action. . . . [¶] (b) Any defense as to the time limit for presenting a claim described in subdivision (a) is waived by failure to give the notice set forth in subdivision (a) within 45 days after the claim is presented, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant." The italicized words were amended in 1987 to reflect extension of the claims presentation period to six months. (Stats. 1987, ch. 1201, § 19, No. 4 Deering's Adv. Legis. Service, pp. 4398-4399; Stats. 1987, ch. 1208, § 4, No. 4 Deering's Adv. Legis. Service, pp. 4426-4427.)

advice of her doctors, she underwent a bilateral mastectomy and reconstructive surgery. Mrs. Phillips and her husband, also a plaintiff, allege that the surgery was both medically unnecessary and negligently performed and that as a result she developed complications, including gangrene. Plaintiffs further allege that, notwithstanding the unsuccessful surgery, Mrs. Phillips was released from the hospital on October 2, 1983, without being informed of the nature or extent of her condition. As a result, plaintiffs allege that Mrs. Phillips has been compelled to seek extensive additional medical treatment, including surgical intervention.

On April 6, 1984 (205 days after the surgery and 185 days after Mrs. Phillips's release from the hospital), plaintiffs' counsel mailed to the hospital a notice (hereafter 364 notice) pursuant to Code of Civil Procedure section 364, subdivision (a), which requires potential medical malpractice plaintiffs to notify health care providers of their intent to sue 90 days prior to filing a complaint.

Plaintiffs' 364 notice was typed on their law firm's stationery which bore the firm's name, address and telephone number, was signed by their attorney and stated as follows:

"Desert Hospital
 1150 North Indian Avenue
 Palm Springs, California 92262

"Re: *Intention to Commence Action*
      Paula E. Phillips and Richard A. Phillips
      Date of Incident: September 12, 1983

"To Whom It May Concern:

"This letter will serve to advise you that this office intends to commence an action against Desert Hospital on behalf of Paula E. Phillips and her husband Richard A. Phillips. This action arises out of apparent Health Care Provider Negligence (Medical Malpractice) resulting from the diagnosis, care, treatment, operation and related services rendered to Paula E. Phillips on or about September 12, 1983 at Desert Hospital, Palm Springs, California, and the subsequent complications, treatment, damages and emotional distress resulting therefrom. Mr. Phillips will claim damages for loss of consortium and for his mental and emotional suffering resulting from the damages and disfigurement to his wife." (Original italics.)

Having received no response from the hospital, plaintiffs filed a complaint on July 27, 1984, in which they alleged causes of action for negligence, willful misconduct, fraud, conspiracy to defraud, concealment, intentional and negligent infliction of emotional distress and loss of consortium. The

complaint named as defendants Mrs. Phillips's treating physicians and the hospital.

The hospital demurred to the complaint on the ground that plaintiffs had failed to state a cause of action because they did not allege compliance with the claim presentation requirements of the act.

Before the demurrer was scheduled to be heard, plaintiffs filed without leave of court a first amended complaint. (Code Civ. Proc., § 472 [prior to trial of issue of law thereon, pleading may be amended once of course after demurrer filed].) In the first amended complaint, plaintiffs attempted to remedy the asserted defect by stating, "Plaintiffs have complied with the provisions of Government Code § 900, et seq.," and by attaching and incorporating by reference applications they had recently sent to the state and county for leave to present a late claim. According to the amended complaint, the hospital's demurrer was the first indication to plaintiffs that the hospital was a public entity.

The amended complaint claimed the hospital was estopped from asserting any defenses based upon plaintiffs' failure to comply with the claim presentation requirements. The alleged ground of estoppel was that the hospital had attempted to conceal its identity as a public entity and had not complied with section 7530 (requiring public entities to identify themselves as such by so stating on their "letterhead stationery" and business cards).

The hospital demurred to the first amended complaint on the same ground relied upon in demurring to the original complaint, to wit, plaintiffs' alleged lack of compliance with the act. The demurrer stated that claims were required to be presented to the hospital's governing board.

The trial court sustained the demurrer without leave to amend and subsequently dismissed the amended complaint. Plaintiffs appealed from the order of dismissal and the Court of Appeal affirmed the judgment. Plaintiffs then petitioned for review. We granted review and transferred the case to the Court of Appeal for reconsideration in light of *Foster* v. *McFadden* (1973) 30 Cal.App.3d 943 [106 Cal.Rptr. 685] and sections 910.8, 911 and 911.3. The Court of Appeal subsequently rendered a second opinion in which it reaffirmed its initial judgment and distinguished the instant case from *Foster* v. *McFadden, supra*. We again granted review and now reverse.

## II.

On appeal below, the court addressed the question whether plaintiffs' 364 notice complied substantially with the claim presentation require-

ments of the act. Finding the answer in the negative, the Court of Appeal upheld the dismissal of the plaintiffs' action. While we agree that the 364 notice does not comply substantially with the claim presentation requirements of the act (see fn. 7, *post*), that conclusion is not dispositive of the case. The dispositive issue is whether plaintiffs' 364 notice triggered the notice and defense-waiver provisions of the act (§§ 910.8, 911, 911.3). Recognizing that as the dispositive issue renders the Court of Appeal opinion largely irrelevant. Accordingly, we have no need to address directly much of the Court of Appeal's opinion, reasoning and authority.

A. *Notice and Defense-waiver Provisions of the Tort Claims Act*

■ It is well settled that the purpose of the claims statutes "is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.]" (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 455 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) To achieve this purpose, section 911.2 requires a claimant to present a claim to the public entity within a specified time after accrual of the cause of action.[3] In medical malpractice cases, the action accrues on claimants' actual or constructive discovery of the malpractice. (*Martinez* v. *County of Los Angeles* (1978) 78 Cal.App.3d 242, 245 [144 Cal.Rptr. 123].)

If the public entity determines a "claim as presented" fails to comply substantially with sections 910 and 910.2, and is therefore defective, the public entity may either "give written notice of [the claim's] insufficiency, stating with particularity the defects or omissions therein" within 20 days (§ 910.8; see fn. 2, *ante*), or waive any defense "as to the sufficiency of the claim based upon a defect or omission in the claim as presented . . . ." (§ 911; see fn. 2, *ante*.) If the public entity does send a notice of insufficiency, it may not take further action on the defective claim for a period of 15 days after such notice is given. (§ 910.8; see fn. 2, *ante*.) Whether or not it decides to provide a notice of insufficiency, the public entity must notify the claimant within 45 days after the claim is presented whether the claim, defective or otherwise, was timely filed. (§ 911.3, subd. (a); see fn. 2, *ante*.) Thus, if a section 910.8 notice of insufficiency is sent, the board must make a timeliness determination within 10 days after the last date the claimant could amend the claim to cure the insufficiency identified. Failure to provide such notice of timeliness waives a public entity's defense

---

[3] Before 1987, the time specified was 100 days. In 1987, the Legislature amended sections 911.2 and 911.3, extending the period within which claims must be presented from 100 days to 6 months. The amendments do not apply to this appeal, however, nor do they affect our determination of the principal issue on appeal. (See Stats. 1987, ch. 1208, § 11, No. 4 Deering's Adv. Legis. Service, p. 4432.)

based on untimeliness even if the claim is otherwise insufficient, unless the claimant has failed to state in the claim an address where such notices should be sent. (§ 911.3, subd. (b); see fn. 2, *ante.*)

The Legislature has thus provided a comprehensive scheme which requires a claimant to notify the appropriate public entity of a claim. This notification in turn allows the public entity an opportunity to determine expeditiously the claim's timeliness and sufficiency. If the notice is untimely or lacks any of the information required by sections 910 and 910.2, the public entity may require the claimant to justify the delay or supply the missing data. If the public entity fails to require the claimant to cure such defects, then it waives certain defenses which are otherwise available to challenge a lawsuit based upon the claim. This possibility of waiver encourages public entities to investigate claims promptly, and to make and notify claimants of their determinations, thus enabling the claimants to perfect their claims. The overall result is an incentive to public entities to manage and control the claims made against them.

## B. *Section 910 Requirements and Defective Claims*

Section 910 identifies the information a proper notice of claim should include to enable a public entity to investigate and evaluate the claim to determine whether settlement is appropriate. Prior to a 1987 amendment, section 910 provided that when a claim is presented, it "shall show:[4] [¶] (a) The name and post office address of the claimant; [¶] (b) The post office address to which the the person presenting the claim desires notices to be sent; [¶] (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted; [¶] (d) A general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim; [¶] (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known; and [¶] (f) The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed."[5]

---

[4] In 1987, section 910 was amended to read in relevant part: "A claim shall be presented by the claimant . . . and shall show *all of the following* . . . ." (Amended portion italicized.) Whatever intent the Legislature may have had in adding this language is of no consequence here. The 1987 amendments apply only to actions based on acts or omissions occurring on or after January 1, 1988. (See Stats. 1987, ch. 1208, § 11, No. 4 Deering's Adv. Legis. Service, p. 4432.) Moreover, since the Legislature did not amend the notice-of-insufficiency provisions to eliminate the reference to insufficiencies due to "defects or *omissions*" (§§ 910.8, 911, italics added), our determination of what type of document triggers those provisions would not be affected even if the amendment to section 910 were applied to the instant case.

[5] The 1987 amendments changed section 910, subdivision (f), to read in pertinent part: "The amount claimed *if it totals less than ten thousand dollars ($10,000)* . . . . *If the amount*

When a public entity receives a document which contains the information required by section 910 and is signed by the claimant or her agent as required by section 910.2, the public entity has been presented with a "claim" under the act, and must act within 45 days or the claim is deemed to have been denied. (§ 912.4.) Once a claim is denied or deemed to have been denied, the claimant may then proceed to file a lawsuit. (§ 945.4.)

But it is not, as the hospital suggests, the filing of a complete and valid "claim" that triggers the notice and defense-waiver provisions of the act. █ Such confusion may stem from the Legislature's use of the term "claim" to describe two distinct situations. On the one hand, as previously noted, a "claim" is a notice which complies with sections 910 and 910.2. On the other hand, the notice and defense-waiver provisions, sections 910.8 and 911, use the phrase "claim as presented" to identify a "claim" which is defective due to its failure to comply substantially with sections 910 and 910.2[6] and, contrary to the hospital's position, it is *only* a "claim as presented [that] fails to comply substantially" that triggers sections 910.8, 911 and 911.3. (§ 910.8; *Foster* v. *McFadden, supra,* 30 Cal.App.3d at p. 947.) █ Accordingly, it only remains to be determined whether the hospital was required to treat plaintiffs' 364 notice as a defective claim triggering the notice and defense-waiver provisions of sections 910.8, 911 and 911.3.

In this regard, the hospital attempts to distinguish between defective "claims" which properly trigger the act's notice and defense-waiver provisions and other notices of possible claims, such as plaintiffs' 364 notice, which, according to the hospital, it was at liberty simply to ignore without consequence. However, we perceive no principled basis for such a distinction and therefore conclude that a notice, such as plaintiffs' 364 notice, which discloses the existence of a claim that if not paid or otherwise

claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether jurisdiction over the claim would rest in municipal or superior court." (Stats. 1987, ch. 1208, § 2, No. 4 Deering's Adv. Legis. Service, p. 4426, italics added to reflect amendments.)

[6] Although the notice of timeliness provision, section 911.3, subdivision (a), does not use the phrase "claim as presented," there are two reasons for concluding that section 911.3 applies both to defective claims and to claims complying substantially with sections 910 and 910.2. First, as previously noted, by providing 45 days within which a notice of timeliness must be sent to avoid waiving timeliness defenses, section 910.8 allows a public entity 10 days after expiration of the time for (1) sending a notice of insufficiency of a defective claim (20 days after the claim is presented) and (2) receiving any curing amendments (15 days thereafter) to determine whether a claim is timely. Second, the *only* exception to application of the timeliness-defense waiver occurs "when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant." (§ 911.3, subd. (b).) The insufficiency-defense waiver provision, section 911, contains the identical exclusive exception to application of the insufficiency-defense waiver.

resolved will result in litigation, must be treated as a defective "claim" activating the notice and defense-waiver provisions of the act, sections 910.8, 911 and 911.3. (*Tyus* v. *City of Los Angeles* (1977) 74 Cal.App.3d 667, 672 [141 Cal.Rptr. 630]; *Foster* v. *McFadden, supra,* 30 Cal.App.3d at p. 947.)

### C. *Plaintiffs' Notice to the Hospital*

Plaintiffs contend that, whether or not their 364 notice was insufficient under section 910,[7] the hospital's receipt of the 364 notice activated sections 910.8, 911 and 911.3 and thus required the hospital to notify plaintiffs in writing as to (a) what additional section 910 information was necessary to allow it to initiate an investigation into the incident (§ 910.8) and (b) whether the notice of claim was timely (§ 911.3, subd. (a)). Plaintiffs further contend that the hospital, having failed to provide such notices, waived any defenses as to the sufficiency of the claim based upon omitted section 910 requirements (§ 911) or untimeliness (§ 911.3, subd. (b)).

In response, the hospital, citing *Lutz* v. *Tri-City Hospital* (1986) 179 Cal.App.3d 807 [224 Cal.Rptr. 787], argues that plaintiffs' 364 notice cannot, as a matter of law, be considered a "claim" under the act. *Lutz* indeed held that the filing of a 364 notice "does not constitute the filing of a claim, late or otherwise, and [a hospital's] failure to respond does not constitute a waiver of its defense." (*Id.* at p. 813.) The *Lutz* court based its conclusion on two distinctions between a 364 notice and a section 910 claim: the differences in jurisdictional effect and in required content.

The *Lutz* court noted that failure to comply with Code of Civil Procedure section 364 (section 364) is not a jurisdictional defect (*Lutz, supra,* 179 Cal.App.3d at p. 812) but, instead, merely provides a ground for discipline by the State Bar. (Code Civ. Proc., § 365; see *Lesko* v. *Superior Court* (1982) 127 Cal.App.3d 476, 482 [179 Cal.Rptr. 595].) In contrast, submission of a claim to a public entity pursuant to section 900 et seq. "is a condition precedent to a tort action and the failure to present the claim bars the action." (*Lutz, supra,* 179 Cal.App.3d at p. 812, citing *Williams* v. *Horvath* (1976) 16 Cal.3d 834 [129 Cal.Rptr. 453, 548 P.2d 1125].) Both these observations are accurate, but the *Lutz* court did not explain the sig-

---

[7] Plaintiffs argue that their 364 notice complied sufficiently with the section 910 requirements to enable the hospital to investigate the incident adequately to determine if settlement negotiations were appropriate. It is indisputable, however, that the 364 notice does not state the amount plaintiffs sought in damages as required by section 910, subdivision (f), and therefore fails to comply substantially with section 910. (See *Foster* v. *McFadden, supra,* 30 Cal.App.3d at p. 946, & fn. 3.) Under the analysis adopted herein we need not address that issue further.

nificance of this distinction in the context of the notice and defense-waiver provisions and we do not perceive any. The disparate jurisdictional effects flowing respectively from noncompliance with section 364 and the claim presentation requirements of the act (§ 900 et seq.) relate only to whether a *lawsuit* may be filed. As previously noted, however, the crucial issue here is the preliminary one of whether plaintiffs' 364 notice constituted a "claim as presented," requiring notification or waiver of its deficiencies as a claim. The fact that compliance with section 364 is not a jurisdictional prerequisite to a lawsuit is wholly irrelevant to the effectiveness of a 364 notice as a document triggering the notice and defense-waiver provisions of the act.

The *Lutz* court also distinguished a 364 notice from a section 910 claim on the ground that such a claim must be more detailed and specific than a 364 notice, which need only "set out the legal basis for the claim and the type of loss sustained, 'including with specificity the nature of the injuries suffered' " (179 Cal.App.3d at p. 812). If a claim complies substantially with sections 910 and 910.2, however, sections 910.8, 911 and 911.3 do not come into play. The latter sections become significant only when the "claim as presented" does *not* substantially comply with sections 910 and 910.2.

We conclude, therefore, that a document constitutes a "claim as presented" triggering sections 910.8, 911 and 911.3, if it discloses the existence of a "claim" which, if not satisfactorily resolved, will result in a lawsuit against the entity. (*Tyus* v. *City of Los Angeles, supra,* 74 Cal.App.3d at p. 672.) A public entity's receipt of written notice that a claim for monetary damages exists and that litigation may ensue places upon the public entity the responsibility, and gives it the opportunity, to notify the potential plaintiff pursuant to sections 910.8 and 911 of the defects that render the document insufficient under sections 910 and 910.2 and thus might hamper investigation and possible settlement of the claim. Such a written notice claiming monetary damages thereby satisfies the purposes of the claims act—to facilitate investigation of disputes and their settlement without trial if appropriate (74 Cal.App.3d at p. 672).

The hospital contends that plaintiffs could never have *intended* their 364 notice to function as a claim for purposes of the act because, by plaintiffs' own admission, they were not aware of the hospital's status as a public entity. The hospital fails to explain, however, why or how a claimant's intent, even if ascertainable, is relevant to the notice and defense-waiver provisions of the act. Implementation of the purposes of the claim presentation requirements—to require public entities to manage and control claims and to encourage timely investigation and settlement to avoid needless litigation—depends not on a claimant's state of mind but rather on the information imparted to the public entity. Thus, the relevant inquiry is not

into plaintiffs' subjective intent but whether their 364 notice disclosed to the hospital that they had a claim against it which, if not satisfactorily resolved, would result in their filing a lawsuit. (*Foster* v. *McFadden, supra,* 30 Cal.App.3d at p. 947; *Tyus* v. *City of Los Angeles, supra,* 74 Cal.App.3d at p. 673.) Obviously, it did.

The Court of Appeal was concerned that if a letter captioned "Intention to Commence Action" could activate the notice and defense-waiver provisions of the act, then the hospital and other public health providers would be required to treat all such letters written by dissatisfied patients or their attorneys which threaten legal action as "claims," or else risk the loss of defenses from failing to notify the potential claimant of insufficiency or untimeliness pursuant to sections 910.8, 911 and 911.3, subdivision (b). But, provided the existence of a claim for monetary damages is definitely disclosed by the document, that burden upon the public entity is precisely the intended effect of the statutory notice and defense-waiver provisions.

*Foster* v. *McFadden, supra,* 30 Cal.App.3d 943, is directly in point. There, the plaintiff was injured when he was struck by a bulldozer operated by a sanitation district (district) employee. The plaintiff's attorney wrote the employee a letter, and sent a copy to the district, advising the employee of the plaintiff's name, and the date and place of the accident, and asking him to forward the letter to his insurer or, if not insured, to contact the plaintiff's attorney. The district acknowledged being advised of the incident by notifying the plaintiff's attorney of the district's insurance coverage and requesting the attorney to direct further inquiries to its insurer. The plaintiff subsequently brought an action against the district. The trial court entered judgment in the district's favor based solely on its conclusion that the plaintiff had failed to comply with the claim presentation requirements of the act.

The *McFadden* court reversed, reasoning that the plaintiff's letter "accomplished the two principal purposes of a sufficient claim. It afforded the district the opportunity to make a prompt investigation of the accident occasioning the letter and it gave to the district the opportunity to settle without suit, if it so desired." (30 Cal.App.3d at p. 949.) Thus, the *McFadden* court concluded that the letter was sufficient to activate the notice and defense-waiver provisions of sections 910.8 and 911.[8] (30 Cal.App.3d at p. 949.)

---

[8] *McFadden* predates the enactment of section 911.3, which was added to the act in 1983 and which requires a governmental entity to respond to a claim within 45 days of receipt or waive its *timeliness* defense. (Stats. 1983, ch. 107, § 1, p. 277.) The *McFadden* holding would have applied equally to that provision, had it by then been enacted.

The concern of the Court of Appeal below that an improperly captioned document could have an unintended legal effect is likewise misplaced. ■ First, it is settled that the caption or title of a notice does not diminish its legal effect as a claim. (*Scruggs* v. *Haynes* (1967) 252 Cal.App.2d 256, 268 [60 Cal.Rptr. 355]; see also *Foster* v. *McFadden, supra,* 30 Cal.App.3d at p. 947.) More importantly, the notice and defense-waiver provisions (§§ 910.8, 911, 911.3), while falling short of placing an affirmative duty on public entities to obtain the information deemed necessary to investigate incidents and to determine whether settlement is appropriate, nevertheless furnish a strong incentive to do so by sanctioning a public entity that fails to ask the claimant for such information. Thus, if a public entity receives a document that alerts it to the existence of a claim and the possibility of a lawsuit but fails to comply substantially with sections 910 and 910.2, the purposes of the act are best served by requiring the public entity to notify the claimant of the nature of the claim's insufficiencies or lack of timeliness or else waive, by operation of sections 911 and 911.3, its defenses based on those deficiencies.

■ Inasmuch as the hospital failed to notify plaintiffs of the insufficiencies in their 364 notice that rendered it defective to comply substantially with sections 910 and 910.2, the hospital has waived any defenses it may have otherwise asserted based on such insufficiencies. (§ 911.) Further, as it failed to notify plaintiffs of any timeliness defects (§ 911.3, subd. (a)), the hospital has similarly waived any defenses it might have raised on the ground of plaintiffs' asserted failure to present a timely claim (§ 911.3, subd. (b)). Accordingly, there is no reason to allow plaintiffs to amend their complaint.

D. *Estoppel*

Plaintiffs also contend that the hospital should be estopped from asserting any defenses based on plaintiffs' failure to comply with the act, arguing (1) the hospital knew plaintiffs were mistaken as to its public-entity status; (2) it concealed its status by operating under the name "Desert Hospital" instead of "Desert Hospital District" and failing to identify itself as a public entity on medical records and in its written communications with plaintiffs; (3) by so concealing its identity the hospital intended that potential claimants would err and treat it as a private hospital when asserting malpractice claims; (4) plaintiffs were ignorant of the hospital's public entity status; and (5) plaintiffs relied on the hospital's concealment of its status to their detriment by treating it as a private hospital, which was prejudicial to their claim.

As explained, however, defendants are barred under sections 910.8, 911, and 911.3 from treating plaintiffs' 364 notice as insufficient to comply with the act. It is therefore unnecessary for us to consider whether defendants are also barred under principles of estoppel from claiming such noncompliance.

## III.

For the foregoing reasons, we reverse the judgment of the Court of Appeal with directions to remand to the trial court with directions to vacate its order dismissing the action and to issue an order overruling the demurrer.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., and Kennard, J., concurred.